## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LIONEL LAWRENCE,

                *Plaintiff,*

    v.

MICHAEL NUTTER, et al.,

                *Defendants.*

CIVIL ACTION
No. 13-4293

**PAPPERT, J.**                                          **June 20, 2017**

### MEMORANDUM

Lionel Lawrence sued former Mayor of Philadelphia Michael Nutter, Philadelphia Prison System Commissioner Louis Giorla, and Curran-Fromhold Correctional Facility Warden John Delaney alleging that they violated his constitutional rights by, *inter alia*, housing Lawrence in a three-person cell that was originally designed for two people. The Court grants Defendants' motion to dismiss because Lawrence has not alleged that any of the individual Defendants were personally involved in the alleged underlying constitutional violation. Lawrence may amend his complaint again, consistent with the attached Order.

### I.

Lawrence's original action was one of approximately 700 overcrowding cases that were consolidated and where the sole defendant was the City of Philadelphia. *See Lawrence v. Nutter*, 655 F. App'x 129 (3d Cir. 2016). Lawrence was initially represented by counsel. In December 2013, the City reached an agreement with Plaintiffs' counsel. Lawrence rejected the settlement, his attorney withdrew from the case in April 2014 and Lawrence continued with this litigation *pro se*. *Id.* at 130.

1

On July 15, 2014, Defendants filed a motion to dismiss. (ECF No. 12.) Lawrence did not file a response. Judge Shapiro instructed him to respond; when he failed to do so, she granted the Defendants' motion. The Third Circuit Court of Appeals reversed, concluding that the district court abused its discretion by dismissing Lawrence's suit without addressing the factors set forth in *Poulis v. State Farm Fire & Casualty Company*, 747 F.2d 863, 868 (3d Cir. 1984). *See Lawrence*, 655 F. App'x at 131.

Lawrence filed his Amended Complaint on July 25, 2017. (ECF No. 23.) Defendants filed a second motion to dismiss on July 27, 2016. (ECF No. 24.) On December 20, 2016, the case was reassigned to this Court. (ECF No. 28.) On January 27, 2017, the Court ordered Lawrence to file a response to the Defendants' motion. (ECF No. 30.) Lawrence responded on February 21, 2017.

Lawrence's Amended Complaint alleges he is a pretrial detainee currently housed in Curran-Fromhold Correctional Facility. (Am. Compl. ¶ 7.)[1] Lawrence explains that while the unit he is housed in was originally constructed to hold 64 inmates, due to severe overcrowding, it now houses 96 inmates. (*Id.*) Prisoners are housed in three-person cells where one person sleeps on a plastic "boat," which is a plastic tray used as a bed. (*Id.* ¶ 8); *see also Robinson v. Nutter*, No. 13-538, 2017 WL 1330507, at *1 (E.D. Pa. Feb. 3, 2017). The boat is kept near the cell's toilet, which exposes it to urine and fecal matter. (Am. Compl. ¶ 8.) Lawrence also alleges the prison has subjected him to, *inter alia*, lockdowns, dangerous and unhealthy conditions and inadequate laundry practices. (*Id.* ¶¶ 10, 12, & 14.)

---

[1] Lawrence appears to be a former inmate. On March 27, 2017, he filed a letter to update the personal address listed on the docket. (ECF No. 32.) In the letter, he remarked that he now has a "home address."

## II.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether the second amended complaint will survive Defendants' motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

This plausibility standard, however, "does not impose a heightened pleading requirement" and does not require a plaintiff to plead specific facts. *Id.* In other words, "courts cannot inject evidentiary issues into the plausibility determination." *Id.* The Third Circuit has also made it clear that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss" because a "prima facie case is an evidentiary standard, not a pleading requirement and hence is not proper measure of whether a complaint fails to state a claim." *Connelly*, 809 F.3d at 789 (internal quotations and citations omitted). Instead, a plaintiff should plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Id.* (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

Finally, because Lawrence filed his complaint *pro se*, the Court "must liberally construe his pleadings." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citation omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers"). "Liberal construction of *pro se* pleadings is merely an embellishment of the notice-pleading standard set forth in the Federal Rules of Civil Procedure." *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring) (citation and quotation omitted). "Courts are to construe complaints so 'as to do substantial justice,' keeping in mind that *pro se* complaints in particular should be construed liberally." *Bush v. City. of*

*Philadelphia*, 367 F. Supp. 2d 722, 725 (E.D. Pa. 2005) (quoting *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004)).

## III.

Lawrence asserts claims under § 1983 for violations of the First, Fifth, Eighth, and Fourteenth Amendments. To establish a *prima facie* case under § 1983, Lawrence must first demonstrate that a person acting under color of law deprived him of a federal right. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). Lawrence must also show that the person acting under color of law "intentionally" violated his constitutional rights or acted "deliberately indifferent" in violation of those rights. *See, e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (citing *Hill v. California*, 401 U.S. 797, 802–05 (1971)); *see also Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000).

## A.

Lawrence sued only individual defendants. "In order to sustain a § 1983 claim against an individual acting under the color of state law, a plaintiff must demonstrate that the defendant was personally involved in the alleged violations of his or her federal rights." *Andrews v. Kenney*, No. 16-1872, 2017 WL 2591931, at *2 (E.D. Pa. June 14, 2017) (citing *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Lawrence can establish that a supervisor-defendant was personally involved by alleging facts under either of two theories: "(1) the defendant-supervisor participated in violating the plaintiff's rights, directed others to violate them, or had knowledge of and acquiesced in his subordinates' violations; and (2) the defendant, in his role as policymaker, acted with deliberate indifference in establishing and maintaining a policy, practice, or

custom which directly caused the plaintiff's constitutional harm." *Brown v. May*, No. 16-1873, 2017 WL 2178122, at *2 (E.D. Pa. May 17, 2017).

While a Court, under the first theory, "can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). A plaintiff proceeding under the second theory must "(1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001). "[I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the supervisor had done more than he or she did." *Id.* at 216 (quotation omitted). Instead, a plaintiff "must specifically identify the acts or omissions of the supervisors that show deliberate indifference, and suggest a relationship between the identified deficiency of a policy or custom and injury suffered." *Robinson*, 2017 WL 1330507, at *2.

Assuming without deciding that Lawrence has alleged an underlying constitutional violation related to prison overcrowding, his Amended Complaint fails to state a claim under either of the theories of personal involvement discussed above. The Amended Complaint does not allege facts to establish that any of the Defendants were personally involved in the underlying constitutional violation, nor does it allege that

any of the individual defendants established a custom or practice relating to housing inmates in three-person cells or any other prison conditions. *See Brown*, 2017 WL 2178122, at *3; *Robinson*, 2017 WL 1330507, at *3.

**B.**

Lawrence did not sue the City of Philadelphia. In its opinion, the Third Circuit stated that "some uncertainty exists as to the parties Lawrence intended to sue." *Lawrence*, 655 F. App'x at 131. "Although Lawrence's complaint named only individual defendants, including the Commissioner of the PPS and the Warden of the facility where Lawrence was held, it described defendant Michael Nutter, Mayor of Philadelphia, as 'a municipality.' Further, Lawrence's case was consolidated with roughly 700 others into an action in which the City of Philadelphia was the sole defendant. As it stands now, it is unclear whether, in addition to the Commissioner and the Warden, Lawrence's intended defendant is Mayor Nutter, the City of Philadelphia, or both." *Id.*

In light of these comments, the Court will broadly construe Lawrence's complaint to encompass claims against the City. The Court analyzes Lawrence's claims against the City under the standard for municipal liability set forth in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Generally, a municipality will not be held liable under the doctrine of *respondeat superior* for the misconduct of its employees. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). Rather, a municipality can only be liable under § 1983 when a constitutional injury results from the implementation or execution of an officially

adopted policy or informally adopted custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. 658).

A policy "is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrew*, 895 F.2d at 1480 (citation and quotation omitted). "A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law." *Id.* (citation and quotation omitted). "In either instance, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Andrews*, 895 F.2d at 1480). "[A] policy or custom may also exist where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Natale*, 318 F.3d at 584 (citation and quotation omitted).

A successful *Monell* claim must therefore establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom. *See Monell*, 436 U.S. at 658. To show causation where the alleged policy or custom does not facially violate constitutional rights, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences."

*Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997); *see also Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).  "A showing of simple or even heightened negligence will not suffice."  *Id.*  In other words, custom "requires proof of knowledge and acquiescence by the decisionmaker."  *McTernan*, 564 F.3d at 658.

To the extent a plaintiff alleges that defendants failed to train their employees, this failure to train must also "amount to a deliberate indifference to the rights of persons with whom those employees will come into contact."  *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999).  Moreover, "the identified deficiency in a . . . training program must be closely related to the ultimate injury," in other words, it "must have actually caused the constitutional violation."  *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)) (quotations omitted).  "Ordinarily, a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for the purposes of failure to train."  *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).

Lawrence has alleged a policy of placing three inmates in cells that were designed to hold only two people.  Because this policy is not *per se* unconstitutional, *see Hubbard v. Taylor*, 538 F.3d 229, 235 (3d Cir. 2008), he must plead facts which establish that the decision was "taken with 'deliberate indifference' as to its known or obvious consequences."  *Bd. of Cty. Comm'rs* 520 U.S. at 407.  Lawrence has not so alleged, nor has he identified a policymaker responsible.  His complaint accordingly does not state a claim under *Monell*.

## IV.

"[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Under Federal Rule of Civil Procedure 15(a), "courts may grant . . . amendments 'when justice so requires.'" *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2004) (citing Fed. R. Civ. P. 15(a)). Laurence is free to file a Second Amended Complaint. In the Second Amended Complaint, he should clarify if he seeks to sue the City of Philadelphia in addition to the individually named Defendants.

An appropriate order follows.


BY THE COURT:


***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.